UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EVAN WHEELER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:15CV368 RLW |
| | ) |
| AMERICAN PROFIT RECOVERY, INC. et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's Motion for Rule 23 Class Certification (ECF No. 43). The parties fully briefed the motion, and on October 5, 2016, the Court held a hearing and took the motion under submission. The motion is now ready for disposition.

**I. BACKGROUND**

This case stems from a series of collection letters sent to Plaintiff by Defendant American Profit Recovery, Inc. ("APR") regarding a debt Plaintiff owed to Defendant Anheuser-Busch Employees' Credit Union ("A-B Credit Union"). The letters identified APR as the collection agency obtained by A-B Credit Union to collect the debt; provided APR's address and phone number for correspondence purposes; set forth the balance owed and other required disclosures; and requested that Plaintiff arrange to resolve the debt. (Pl.'s Mot. for Class Cert. Ex. 5, ECF No. 43-5) According to the agreement, there are two tiers pertaining to the collection process. APR charges a rate of $11.99 per Tier I account, and APR sends a total of 5 letters before placing the account into Tier II. With regard to Tier II, APR receives 38% of the amounts recovered under that tier. (Pl.'s Ex. 4, ECF No. 43-4)

In his Amended Complaint, Plaintiff brings an action for statutory damages on behalf of a putative class for violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.*

("FDCPA"). (Pl.'s First Amended Complaint ("FAC"), ECF No. 20) Plaintiff alleges that he received letters from APR purporting to collect a debt for A-B Credit Union. However, when he called APR to inquire about the debt, he allegedly was informed that that APR was unable to answer any questions regarding the circumstances of his debt. Instead, APR directed Plaintiff to call A-B Credit Union because the account was being handled by A-B Credit Union, and APR was not involved in the collection process. (*Id.* at ¶¶ 15-17) Plaintiff called from his attorney's office using his attorney's cell phone, and during the call Plaintiff did not dispute the debt, attempt to make a payment, or otherwise ask for any specific information from APR. (Defs.' Ex. B, Wheeler Dep. pp. 76-80, ECF No. 49-2; Pl.'s Ex. 12, ECF No. 43-11) Subsequent to this discussion, Plaintiff received another letter from APR indicating that Plaintiff's failure to resolve the delinquent account would result in the account being sent to the Tier II collection division. (FAC ¶ 20)

Plaintiff contends that APR furnished the collection letter knowing that said letter would create the false believe in Plaintiff and the putative class that APR was participating in the debt collection when such was not true. (*Id.* at ¶ 21) This alleged scheme, known as "flat-rating" is prohibited by 15 U.S.C. § 1692j, which makes it "unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating." 15 U.S.C. § 1692j(a). Specifically, Plaintiff alleges that the letters created a false impression that someone other than A-B Credit Union was taking part in the collections process; falsely represented the character and legal status of the debts; used deceptive means to collect debts; and used a name other than the true name of the debt collector's business. (FAC ¶ 43)

In his motion for class certification, Plaintiff asserts that APR does not set up a Trust account for Tier I payments and does not accept Tier I payments. Instead, debtors are instructed to directly pay A-B Credit Union. He further asserts that the Tier I letters are automatically generated by APR's computer system, and APR does not review the accounts, only the format, before transmitting the letters to the printing company. Further, APR has no authority to negotiate debts on behalf of A-B Credit Union. Plaintiff claims that he received five Tier I letters from APR (Nos. '101, '201, '301, '401, and '501) from APR regarding the balance he owed to A-B Credit Union.

Plaintiff maintains that this case is properly brought as a class action and proposes the following class:

> All consumers who were sent both Tier 1 '101 and '201 letters by
> APR regarding AB Credit Union accounts during the time period
> of February 2, 2014 to May 20, 2016.

Plaintiff contends that the Tier I process was uniformly applied to all the accounts, so whether such process constitutes impermissible "flat-rating" is a question common to all class members. Thus, Plaintiff asserts that the proposed class satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure and requests that this Court certify the class.

## II. CLASS ACTION STANDARD

Under the Federal Rules of Procedure:

> One or more members of a class may sue or be sued as representative parties on
> behalf of all members only if: (1) the class is so numerous that joinder of all
> members is impracticable; (2) there are questions of law or fact common to the
> class; (3) the claims or defenses of the representative parties are typical of the
> claims or defenses of the class; and (4) the representative parties will fairly and
> adequately protect the interests of the class."

Fed. R. Civ. P. 23(a). The four threshold requirements applicable to class actions under Rule 23(a) are more commonly known referred to as: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997);

3

*Henke v. ARCO Midcon, L.L.C.*, No. 4:10CV86 HEA, 2014 WL 982777, at *3 (E.D. Mo. Mar. 12, 2014). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Once a plaintiff sufficiently demonstrates that he can meet the requirements of Rule 23(a), he can maintain a class action by establishing that the case falls under Rule 23(b). For purposes of the motion now before this Court, Federal Rule of Civil Procedure 23(b)(3) provides that a class action may be maintained where Rule 23(a) is satisfied and "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"In order to obtain class certification, a plaintiff has the burden of showing that the class should be certified and that the requirements of Rule 23 are met." *Coleman v. Watt*, 40 F.3d 255, 258-59 (8th Cir. 1994) (citation omitted). When addressing a Rule 23 motion for class certification, it may be necessary for a court to probe behind the pleadings before reaching a determination on the certification question. *Dukes*, 564 U.S. at 350 (citation omitted).

### III. DISCUSSION

While Plaintiff addressed the factors required to certify a class in his pleadings and during the hearing, the Court notes that Defendants have raised a standing issue with regard to Plaintiff's adequacy to represent the class. "As an initial matter, a prerequisite to class certification is that 'it must be established that the proposed class representatives have [Article III] standing to pursue the claims as to which classwide relief is sought.'" *Chorosevic v. MetLive Choices*, No. 4:05-CV-2394 CAS, 2007 WL 2159475, at *3 (E.D. Mo. July 26, 2007) (quoting

*Wooden v. Bd. of Regents of Univ. Sys. Of Ga.*, 247 F.3d 1262, 1287 (11th Cir. 2001)). "Individual Article III standing is a prerequisite for all actions, including class actions." *Id.* (citation omitted).

Defendants argue that Plaintiff cannot establish Article III standing such that he is unable to adequately represent the class. Specifically, Defendants contend that Plaintiff is unable to demonstrate a concrete injury required to assert standing on a class-wide basis. Plaintiff, on the other hand, asserts that an informational injury under the FDCPA demonstrates a concrete injury.

The Court finds that Plaintiff is unable to establish Article III standing sufficient to represent the class. Plaintiff has the burden of establishing standing by demonstrating (1) an injury in fact, (2) fairly traceable to the defendant's challenged conduct, and (3) that is likely to be redressed by a judicial decision in Plaintiff's favor. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-560 (1992)). Here, Plaintiff contends that an informational injury is sufficient to establish standing under the FDCPA. However, the Court notes that the cases upon which Plaintiff relies to support his contention have been abrogated by the Eighth Circuit.[1] Instead, the Eighth Circuit and district courts within the circuit have held that a Plaintiff must allege more than a statutory violation to demonstrate standing.

---

[1] Plaintiff contends in both the written briefs and the October 2016 oral argument that the Eighth Circuit has recognized that informational injuries arising from the violation of federal statutes are sufficient to demonstrate standing. In support, Plaintiff cites *Hammer v. Sam's East, Inc.* 754 F3d 492 (8th Cir. 2014) and *Charvat v. Mut. First Fed. Credit Union*, 725 F.3d 819 (8th Cir. 2013). However, in *Braitberg v. Charter Commc'ns, Inc.*, 836 F.3d 925 (8th Cir. 2016), the Eighth Circuit Court of Appeals noted that *Hammer* and *Charvat* "declared that 'the actual-injury requirement may be satisfied *solely* by the invasion of a legal right that Congress created.'" *Braitberg*, 836 F.3d at 930 (quoting *Hammer*, 754 F.3d at 498). The *Braitberg* court found that *Spokeo* rejected this absolute view and superseded the precedent set forth in *Hammer* and *Charvat. Id.* Instead, the Eighth Circuit Court of Appeals held that to establish an injury in fact required by Article III, a plaintiff most assert more than "'a bare procedural violation divorced from any concrete harm.'" *Id.* (quoting *Spokeo*, 136 S. Ct. at 1549).

In *Spokeo,* an action brought under the Fair Credit Reporting Act of 1970 ("FRCA"), the United States Supreme Court addressed Article III standing in the context of the alleged violation of a statutory right and found:

> Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, [plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.

*Spokeo*, 136 S. Ct. at 1549. The *Spokeo* Court acknowledged that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute an injury in fact." *Id.* However, the *Spokeo* Court identified two such examples where the plaintiffs were unable to obtain information made public by Congress as statutory violations that also demonstrated injuries in fact. *Id.* at 1549-1550; *see also Boergert v. Kelly Servs., Inc.*, No. 2:15-cv-04185-NKL, 2016 WL 6693104, at *4 (W.D. Mo. Nov. 14, 2016) ("The Court agrees that the deprivation of statutorily mandated information can cause an intangible but concrete harm, if that harm is of the type Congress sought to prevent). The Court further noted, however, that in certain scenarios, a violation of a statutory procedural requirement would not amount to a concrete injury. *Spokeo*, 136 S. Ct. at 1550.

Since *Spokeo*, the Eighth Circuit and district courts within the Eighth Circuit have addressed the standing issue in the context of Congressional statutes and have held that a plaintiff must identify a material risk of harm, not a risk that is speculative or hypothetical. *See Braitberg*, 836 F.3d at 931 (holding that plaintiff alleging that defendant violated the Cable Communications Policy Act by retaining personally identifiable information lacked Article III standing where he failed to allege that the retention caused any concrete and particularized harm); *Boergert*, 2016 WL 6693104, at *4 (finding that while the plaintiff had been deprived of

6

statutorily required information under the FCRA, he failed to show any injury beyond the lack of access to the information and thus did not have standing); *Shoots v. iQor Holdings, US Inc.*, No. 15-cv-563 (SRN/SER), 2016 WL 6090723, at *8 (D. Minn. October 18, 2016) (finding plaintiff's failure to make specific allegations of actual injury in a FCRA claim, even where styled an informational injury, was insufficient to meet the requirements of *Braitberg* or *Spokeo*); *Jackson v. Abendroth & Russell, P.C.*, __ F. Supp. 3d __, No. 4:16-cv-00113 RGE-HCA, 2016 WL 4942074, at *6 (S.D. Iowa September 12, 2016) (relying on *Spokeo* to hold that a violation of the FDCPA alone does not automatically amount to an injury in fact and finding that plaintiff's failure to allege that he suffered a concrete harm that the disclosure requirements of § 1692g of the FDCPA were designed to prevent did not satisfy the injury in fact requirement for Article III standing); *but see Hill v. Accounts Receivable Servs., LLC*, No. 16-219 (DWF/BRT), 2016 WL 6362119, at *4 (D. Minn. Oct. 31, 2016) (finding plaintiff alleged real harms and not merely procedural violations of the FDCPA where he alleged defendant violated his right to truthful information by providing a fake document and including a misleading claim in a conciliation court complaint, and violated his right to be free from collection of unauthorized interest by attempting to collect unlawful interest in the court proceeding).

In the present case, Plaintiff does not allege any concrete harm with regard to the proposed class definition, which pertains solely to letters '101 and '201. In his First Amended Complaint, Plaintiff alleges that he received two collection letters that appeared to indicate that APR was collecting a debt for A-B Credit Union, which information he alleges was false. Nowhere does Plaintiff allege that he was harmed in any way by these two letters.[2] He did not

---

[2] Plaintiff's First Amended Complaint does not mention letter '101 which was the first letter sent by APR on October 10, 2014. (Pl.'s FAC ¶¶ 9-13; Pl.'s Ex. 5, ECF No. 43-5) The two letters to which Plaintiff refers are actually '201 and '401. (Pl.'s Exs. 6, 8; ECF Nos. 43-6, 43-8). However, in the motion, Plaintiff correctly refers to the first two letters he received, letters '101 and '201. (Pl.'s Mot. for Class Cert. p. 8, ECF No. 43)

attempt to contact APR or A-B Credit Union or otherwise attempt to dispute or pay the debt. He does not allege that he was misled or deceived by Defendants in the debt collection process. Indeed, Plaintiff erroneously claims that *Spokeo* does not require that he allege any harm and that merely alleging a violation of §1692j is sufficient to confer standing.

The Court disagrees. "On a general level, [the FDCPA] procedures helps prevent abusive actions by debt collectors. But this does not mean their violation automatically amounts to the injury identified by Congress in the statute." *Jackson*, 2016 WL 4942074, at *9. As in *Spokeo* and the cases that have followed, Plaintiff must allege a concrete injury, and "a bare procedural violation alone does not constitute an intangible harm that satisfies the injury-in-fact requirement. Without further alleging a concrete and particularized injury as a result of the FDCPA violations, [Plaintiff's] claims are insufficient for Article III standing." *Jackson*, 2016 WL 4942074, at *11.

The Court therefore holds that Plaintiff lacks Article III standing with regard to adequately representing the putative class in this matter. While some members of the class may have been injured with respect to the first two letters in Tier I, Plaintiff has constitutional standing to bring a class action only if he alleges and demonstrates that he has personally been injured by Defendants' conduct. *East Maine Baptist Church v. Union Planters Bank, N.A.*, 244 F.R.D. 538, 542 (E.D. Mo. 2007). The lack of injury in fact with regard to the proposed class shows that Plaintiff's interests are not sufficiently similar to the class such that Plaintiff could adequately represent them. Indeed, as stated above, Plaintiff lacks Article III standing and may not represent the class. *See Jackson*, 2016 WL 4942074, at *11 (dismissing class action complaint where the plaintiff failed to allege a concrete injury resulting from an FDCPA violation); *see also Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 779-80 (8th Cir. 2013)

(noting that a district court may not certify a class that has members that lack standing) (citation and quotations omitted).

However, the Court notes that Plaintiff has alleged that he called APR after receiving the fourth letter, allegations that are separate and distinct from the proposed class. To the extent that Plaintiff may be claiming some type of injury in fact unrelated to the proposed class, the Court finds that the standing issue pertaining to Plaintiff's individual claims is not now before this Court. Thus, the Court declines to address this issue absent further briefing by the parties. Because Plaintiff is unable to establish standing to represent the class, the Court need not address the remaining arguments pertaining to Rule 23 criteria class certification. The Court will therefore deny Plaintiff's motion.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Rule 23 Class Certification (ECF No. 43) is **DENIED.**

Dated this 3rd day January, 2017.

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**