UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EVAN WHEELER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:15CV368 RLW |
| ) | |
| AMERICAN PROFIT RECOVERY, INC. et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment and/or Dismissal (ECF No. 43). The motion is fully briefed and ready for disposition.

## I. BACKGROUND

This case stems from a series of collection letters sent to Plaintiff by Defendant American Profit Recovery, Inc. ("APR") regarding a debt Plaintiff owed to Defendant Anheuser-Busch Employees' Credit Union ("A-B Credit Union"). The letters identified APR as the collection agency obtained by A-B Credit Union to collect the debt. (Pl.'s First Amended Complaint ("FAC") ¶¶ 11, 13, 18, ECF No. 20) A-B Credit Union contracted with APR for comprehensive debt collection services. (Defs.' Statement of Material Facts ("SMF") ¶ 2, ECF No. 66) Under the Contract, there were two tiers pertaining to the collection process. APR charged a pre-paid fixed fee per Tier I account, and APR sent a total of 5 letters before placing the account into Tier II. (Pl.'s Resp. in Opp. to SMF Ex. 3 ("Contract"), ECF No. 70-3) With regard to Tier II, APR received a percentage of the amounts recovered under that tier. (*Id.*)

In his First Amended Complaint, Plaintiff brings an action seeking statutory damages for violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA").

(FAC ¶ 1) Plaintiff alleges that he received letters from APR purporting to collect a $120.00 debt for A-B Credit Union. (*Id.* at ¶ 10; Pl.'s Resp. Ex. 5, ECF No. 70-5) The letters, which were created by APR without A-B Credit Union input, contained APR letterhead, business address, and phone number; directed correspondence to APR; and were sent on a schedule imposed by APR. (Defs.' SMF ¶¶ 8-9) The payment remittance slip went directly to A-B Credit Union. (Pl.'s Resp. Ex. 5, ECF No. 70-5) Plaintiff's account was placed with APR for collection under Tier I on October 9, 2014, and he received a series of five collection letters from APR. (Defs.' SMF ¶¶ 16-17) On December 3, 2014, Plaintiff called APR to get more information about the debt using his attorney's cellular telephone. (Defs.' SMF ¶ 19; Pl.'s Resp. Ex. 11, ECF No. 70-10) Plaintiff was informed that he would need to call the number on the top of the letter belonging to A-B Credit Union, and the credit union could assist Plaintiff. (Pl.'s Resp. Ex. 11, ECF No. 70-10) Plaintiff did not contact A-B Credit Union. (Defs.' SMF ¶ 21) On December 8, 2014, Plaintiff received another letter from APR indicating that Plaintiff's failure to resolve the delinquent account would result in the account being sent to the Tier II collection division. (FAC ¶ 20)

Plaintiff alleges that APR furnished the collection letter knowing that said letter would create the false belief that APR was participating in the debt collection when such was not true. (*Id.* at ¶ 21) This alleged scheme, known as "flat-rating" is prohibited by 15 U.S.C. § 1692j, which makes it "unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating." 15 U.S.C. § 1692j(a). Specifically, Plaintiff alleges that the collection activity was a false

representation or deceptive means because it created the false impression that the debt had been sent to collection; that failure to pay would result in more rigorous Tier II collection; and that A-B Credit Union's phone number was the number for a third-party collection agency. (FAC ¶ 25) Plaintiff initially sought class certification in this action, which the Court denied on January 3, 2017. (ECF No. 58) Plaintiff now proceeds on his individual claims.

On March 27, 2017, Defendants filed the present Motion for Summary Judgment and/or Dismissal, asserting that Plaintiff is unable to establish Article III standing and, even if standing exists, APR was meaningfully involved in the collection of Plaintiff's debt on behalf of A-B Credit Union; A-B Credit Union is a creditor and is not liable under the FDCPA; and neither APR nor A-B Credit Union made any false, misleading, or deceptive representation to Plaintiff. In response, Plaintiff contends that he has sufficiently alleged a concrete harm sufficient to establish standing and that evidence exists from which a reasonable jury could find that Defendants engaged in a flat-rating scheme in violation of the FDCPA.

## II. LEGAL STANDARD

Defendants move for summary judgment under Federal Rule of Civil Procedure 56 on the basis of lack of standing. A court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "'Under Article III of the United States Constitution, federal courts may only adjudicate actual cases or controversies.'" *Constitution Party of S. Dakota v. Nelson*, 639 F.3d 417, 420 (8th Cir. 2011) (quoting *Pucket v. Hot Springs Sch. Dist. No. 23-2*, 526 F.3d 1151, 1157 (8th Cir. 2008)). "[I]t is Article III standing that enforces this case-or-controversy requirement." *Id.*

3

"The plaintiff must have standing for the court to have jurisdiction." *Woods v. Caremark, L.L.C.*, No. 4:15-cv-00535-SRB, 2016 WL 6908108, at *2 (W.D. Mo. July 28, 2016) (citing *Hargis v. Access Capital Funding, LLC*, 674 F.3d 783, 793 (8th Cir. 2012)). To establish standing, the plaintiff must demonstrate (1) an injury in fact, (2) fairly traceable to the defendant's challenged conduct, and (3) that is likely to be redressed by a judicial decision in Plaintiff's favor. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-560 (1992)). "When the defendant challenges standing at the summary judgment stage, the plaintiff must submit affidavits or other evidence that demonstrate through specific facts that he has suffered an injury in fact." *Woods*, 2016 WL 6908108, at *2 (citations omitted).

### III. DISCUSSION

Defendants assert that Plaintiff lacks standing because he merely alleges a statutory violation, not an injury in fact. In *Spokeo,* an action brought under the Fair Credit Reporting Act of 1970 ("FRCA"), the United States Supreme Court addressed Article III standing in the context of the alleged violation of a statutory right and found:

> Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, [plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.

*Spokeo*, 136 S. Ct. at 1549. The *Spokeo* Court acknowledged that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute an injury in fact." *Id.* The Court further noted, however, that in certain scenarios, a violation of a statutory procedural requirement would not amount to a concrete injury. *Spokeo*, 136 S. Ct. at 1550.

4

Since the Supreme Court issued *Spokeo*, the Eighth Circuit Court of Appeals and district courts within the Eighth Circuit have addressed the standing issue in the context of Congressional statutes and have held that a plaintiff must identify a material risk of harm, not a risk that is speculative or hypothetical. *See Braitberg v. Charter Commc'ns, Inc.*, 836 F.3d 925, 931 (8th Cir. 2016) (holding that plaintiff alleging that defendant violated the Cable Communications Policy Act by retaining personally identifiable information lacked Article III standing where he failed to allege that the retention caused any concrete and particularized harm); *May v. Consumer Adjustment Co., Inc.*, No. 4:14CV166 HEA, 2017 WL 227964, at *4 (E.D. Mo. Jan. 19, 2017) (finding plaintiff lacked standing in FDCPA case where plaintiff's allegations were merely statutory procedural violations despite claims of real harm and risk of future harm); *Boergert v. Kelly Servs., Inc.*, No. 2:15-cv-04185-NKL, 2016 WL 6693104, at *4 (W.D. Mo. Nov. 14, 2016) (finding that while the plaintiff had been deprived of statutorily required information under the FCRA, he failed to show any injury beyond the lack of access to the information and thus did not have standing); *Shoots v. iQor Holdings, US Inc.*, No. 15-cv-563 (SRN/SER), 2016 WL 6090723, at *8 (D. Minn. October 18, 2016) (finding plaintiff's failure to make specific allegations of actual injury in a FCRA claim, even where styled an informational injury, was insufficient to meet the requirements of *Braitberg* or *Spokeo*); *Jackson v. Abendroth & Russell, P.C.*, 207 F. Supp. 3d 945, (S.D. Iowa September 12, 2016) (relying on *Spokeo* to hold that a violation of the FDCPA alone does not automatically amount to an injury in fact and finding that plaintiff's failure to allege that he suffered a concrete harm that the disclosure requirements of § 1692g of the FDCPA were designed to prevent did not satisfy the injury in fact requirement for Article III standing); *but see Demarais v. Gurstel Chargo, P.A.*, __ F.3d __, No. 16-3173, 2017 WL 3707437, at *4 (8th Cir. Aug. 29, 2017) (holding plaintiff alleged a concrete

5

injury in fact in FDCPA case where he was served discovery requests on a debt he did not owe and defendant made a false threat to proceed to trial, which created a risk of mental distress); *Hill v. Accounts Receivable Servs., LLC*, No. 16-219 (DWF/BRT), 2016 WL 6362119, at *4 (D. Minn. Oct. 31, 2016) (finding plaintiff alleged real harms and not merely procedural violations of the FDCPA where he alleged defendant violated his right to truthful information by providing a fake document and including a misleading claim in a conciliation court complaint, and violated his right to be free from collection of unauthorized interest by attempting to collect unlawful interest in the court proceeding).

In the present case, Plaintiff does not allege any concrete harm with regard to the letters he received from APR. In his First Amended Complaint, Plaintiff alleges that he received a total of five collection letters that appeared to indicate that A-B Credit Union sent the debt to APR for collection, which information he claims was false. (FAC ¶¶ 21, 24) Nowhere in his complaint does Plaintiff allege that he was harmed in any way by these letters, other than the fact that the conduct violated the statute. (FAC ¶ 43) He does not allege that he attempted to contact APR or A-B Credit Union to dispute or pay the debt. He does not allege that he personally was misled or deceived by Defendants in the debt collection process. He claims, however, that APR violated the FDCPA by implying that Plaintiff's debt was in active collections with a collection agency, which prompted him to call APR for more information.

The record demonstrates that Plaintiff did call APR on one occasion, but he called APR from his attorney's office using his attorney's cell phone. He did not ask for anything specific but merely stated, "I received a few letters from you guys and I was just calling to get some more information." (Pl.'s Resp. Ex. 11, ECF No. 70-10) When advised to call the number for A-B Credit Union to obtain more information, Plaintiff ended the call and did not call A-B Credit

6

Union seeking information about the letters or his debt. (Defs.' SMF ¶ 21) Plaintiff acknowledges that he owed the $120.00 debt and that he was unable to pay it when he received the collection letters. (Wheeler Dep. 46:11-24, ECF No. 70-1) He further acknowledges that he believed APR was retained by A-B Credit Union to collect the debt but that he never offered to pay or dispute the debt when he called from his attorney's office. (Wheeler Dep. 76:15-79:9, ECF No. 49-2) He does not allege that he was harmed or suffered a risk of harm by being misled by the letters. Instead, he merely alleges he was inconvenienced. (*Id.* at 83:21-25)

While courts consider the perspective of an unsophisticated consumer when evaluating whether a communication is false or misleading, the Court notes that this standard also contains an objective element of reasonableness to protect debt collectors from liability for peculiar interpretations of collection letters. *Haney v. Portfolio Recovery Assocs., L.L.C.*, 837 F.3d 918, 924 (8th Cir. 2016) (citations omitted). For instance, this standard does not apply to communications sent to a consumer's attorney. *Id.* at 924-25. Here, Plaintiff was represented by counsel, using counsel's phone in counsel's office when he placed the call that he maintains was the nexus between APR's allegedly prohibited conduct and its impact on Plaintiff. The Court is skeptical that Plaintiff was acting as an unsophisticated consumer when he called APR with the assistance of his attorney and allegedly suffered harm from not receiving unspecified information. "On a general level, [the FDCPA] procedures helps prevent abusive actions by debt collectors. But this does not mean their violation automatically amounts to the injury identified by Congress in the statute." *Jackson*, 2016 WL 4942074, at *9. As in *Spokeo* and the cases that have followed, Plaintiff must allege a concrete injury, and "a bare procedural violation alone does not constitute an intangible harm that satisfies the injury-in-fact requirement. Without

7

further alleging a concrete and particularized injury as a result of the FDCPA violations, [Plaintiff's] claims are insufficient for Article III standing." *Jackson*, 2016 WL 4942074, at *11.

The Eighth Circuit recently reiterated that more than a statutory violation is required to demonstrate an injury in fact. In *Demarais v. Gurstel Chargo, P.A.*, the plaintiff incurred debt to Citibank, N.A., which subsequently charged off the debt. __ F. 3d __, 2017 WL 3707437, at *1 (8th Cir. Aug. 29, 2017). Defendants claimed to be the successor in interest and sued plaintiff for post-charge-off interest which plaintiff argued it had no right to collect. *Id.* Plaintiff obtained an attorney and prepared for trial. *Id.* After the case was voluntarily dismissed with prejudice, defendants served plaintiff with interrogatories and a letter representing to be a communication from a debt collector attempting to collect a debt. *Id.* at **1-2. The plaintiff sued under the FDCPA claiming, *inter alia*, that defendants were using unfair means to attempt to collect a debt in violation of 15 U.S.C. §§ 1692e and 1692f. *Id.* at *2. On appeal, defendants argued that plaintiff lacked standing because he failed to allege that he suffered from a concrete injury. *Id.* The Eighth Circuit acknowledged that the violation of a statute which grants a person a statutory right and authorizes such person to sue to vindicate that right "must cause a concrete injury. That concrete injury can be 'the risk of real harm.'" *Id.* at *3 (quoting *Spokeo*, 136 S. Ct. at 1549). The *Demarais* court noted such risk of real harm would be an intangible harm that has a close relationship to a harm traditionally regarded as providing a basis for suit in American courts such as harm suffered by victims of common-law torts. *Id.* (citation and internal quotations omitted). The plaintiff alleged injuries such as spending money on an attorney, serving discovery requests, and spending time defending against a meritless suit. *Id.* at *4. The *Demarais* court held that the alleged false representations in the court pleadings regarding the amount of debt owed and false threat to proceed to trial "create the same risks of mental distress

8

traditionally recognized in unjustifiable-litigation torts . . . that Congress judged sufficient for standing to sue," and thus plaintiff alleged concrete injuries in fact. *Id.* at *4.

Here, Plaintiff does not dispute that he owed the debt. He placed one phone call from his attorney's phone and office and did not ask for any specific information related to the debt. He has not shown by affidavit or other evidence that he was harmed or that there was a risk of harm from the collection letters. Instead, Plaintiff merely alleges statutory procedural violations that caused hypothetical harm. Thus, the Court finds that his unsupported claims of real harm and the risk of future harm resulting from these violations are insufficient to establish a concrete injury in fact. *May*, 2017 WL 227964, at *4. The Court also finds that although this FDCPA case was removed from state court, dismissal is warranted based on Plaintiff's lack of standing. *See Hargis,* 674 F.3d at 793 (dismissal for lack of jurisdiction is appropriate where a plaintiff has not shown injury and does not have standing to bring her claim).

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment and/or Dismissal (ECF No. 64) is **GRANTED**. A separate Judgment will accompany this Memorandum and Order.

Dated this 29th day of September, 2017.

*/s/ Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

9